**Opinion filed September 15, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00275-CV

_____

## RYAN CHADWICK DODSON, Appellant

## V.

## JALYNDA LEIGH SMITH, Appellee

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 28,103-C**

### M E M O R A N D U M   O P I N I O N

Ryan Chadwick Dodson appeals an order that required him to provide child support in the amount of $1,599.57 per month for his disabled, adult son, J.D.C.D. In two issues on appeal, Dodson contends that the trial court abused its discretion when it ordered him to pay child support for J.D.C.D. because (1) Dodson's obligation to support J.D.C.D. terminated when J.D.C.D. turned eighteen and graduated from high school and (2) the evidence was insufficient to establish that

J.D.C.D. was disabled prior to his eighteenth birthday or that the cause of his disability was known to exist before his eighteenth birthday. We affirm.

## I. *Evidence at Trial*

J.D.C.D. was born in July 1995. On March 6, 1997, Smith and Dodson divorced, and the trial court awarded Smith primary custody of J.D.C.D. In July 2010, J.D.C.D. went to live with Dodson. At trial, the evidence showed that J.D.C.D. suffered a stroke in March 2011. While he was hospitalized, doctors also diagnosed him as having Moyamoya disease, which blocks arteries from getting blood to parts of the brain, as well as a genetic blood disorder called Factor V Leiden mutation. The evidence showed that, as a result of these illnesses, J.D.C.D. suffered a number of disabilities that limited his ability to function normally and care for himself. Sometime in 2012, J.D.C.D. returned to live with Smith. On January 27, 2016, when J.D.C.D. was twenty years old, Smith filed a second amended petition to modify the parent-child relationship, in which Smith asked the trial court to order Dodson to provide support for J.D.C.D. indefinitely.

### A. *J.D.C.D.'s Physical Health*

On March 10, 2011, when he was fifteen years old, J.D.C.D. was admitted to Cook Children's Hospital (Cook) in Fort Worth after suffering a stroke. While hospitalized at Cook, J.D.C.D. suffered another stroke and was transferred to Hermann Hospital in Houston in order to undergo a stenting and bypass procedure. After the procedure in Houston, J.D.C.D. returned to Cook for further rehabilitation. Doctors also discovered evidence of a previously undiagnosed stroke that J.D.C.D. had suffered before his 2011 strokes. Following J.D.C.D.'s hospitalization, doctors again diagnosed him with Moyamoya disease, as well as the Factor V Leiden mutation.

Dodson testified that, following J.D.C.D.'s surgery, J.D.C.D. lost half of his peripheral vision in both eyes and needed "substantial care" when he returned home.

Dodson testified that J.D.C.D. needed help bathing, could not cook his own meals, and could not drive. He also said that J.D.C.D. at first needed assistance using the bathroom.

*B. J.D.C.D.'s Neuropsychological and Educational Evaluations*

The evidence showed that J.D.C.D. suffered from a number of behavioral and cognitive health problems after his 2011 strokes. Smith introduced as evidence three neuropsychological evaluations that doctors performed on J.D.C.D. In the first evaluation, which a doctor performed in May 2011 when J.D.C.D. was fifteen years old, the doctor noted that J.D.C.D., though cooperative, appeared anxious and had slow responses to nonverbal tasks. The doctor stated that J.D.C.D.'s "slowed auditory processing will result in difficulty processing information presented in a lecture format in class" and recommended that J.D.C.D. be placed in special education. Finally, the doctor stated that J.D.C.D. would struggle with copying and subjects with a visual spatial component, including math and science classes.

In the second evaluation, which a doctor performed on May 21, 2012, when J.D.C.D. was sixteen years old, the doctor said that J.D.C.D. "continues to exhibit physical symptoms related to his strokes, including decreased sensation and some cognitive neglect along the left side of his body." The doctor also noted that J.D.C.D. exhibited inattention, distractibility, impulsivity, disinhibition, significant disorganization, sleep disturbance, poor frustration tolerance, significant irritability and argumentativeness, and significant social difficulties. The doctor also noted J.D.C.D.'s parents' concerns about his inability to react effectively during emergency situations, poor decision-making, and lack of insight with regard to his own deficits. Because many of the test results were consistent with those in the previous evaluation, the doctor concluded that J.D.C.D.'s "cognitive profile is most significant for executive dysfunction" and that "it is unlikely that he will acquire adequate adaptive functioning skills by the time he turns 18 years old."

In the third evaluation, which a doctor performed when J.D.C.D. was eighteen years old, the doctor noted that J.D.C.D.'s math skills were "severely impaired and below a kindergarten level." The doctor stated that "it is unlikely that [J.D.C.D.] will be able to maintain steady employment in a competitive work environment." The doctor also concluded that "it is unlikely that [J.D.C.D.] will be able to live completely independently, and he will likely require some degree of support throughout his life in order to maintain his physical safety and financial well-being."

Smith also introduced as evidence J.D.C.D.'s school evaluation from 2013. In the evaluation, school officials determined that J.D.C.D. met the federal eligibility requirements for special education services. Officials determined that J.D.C.D. had an educational need for special education services because he had a disability.

*C. J.D.C.D.'s Ability to Function*

In her testimony, Smith provided numerous examples of how J.D.C.D. struggles to function in daily life because of his medical problems. She testified that J.D.C.D. has difficulty completing simple tasks at home. She said that J.D.C.D. cannot use the internet or telephone without supervision. Smith testified that J.D.C.D. requires constant supervision when bathing and brushing his teeth and that he cannot prepare food for himself. She also testified that J.D.C.D. cannot drive or use a bus, nor can he be dropped off somewhere and picked up at a later time. She said that, although her parents typically watch J.D.C.D. while she and her husband are at work, her parents are elderly and she needs to hire assistance. Smith testified that J.D.C.D. has been unable to work and receives SSI benefits. In all, she testified that she believes J.D.C.D. cannot live independently and needs substantial care and personal supervision.

Roy Benjamin Morrison, J.D.C.D.'s counselor, testified about his counseling sessions with J.D.C.D. Morrison testified that J.D.C.D. does not believe that he can perform daily tasks by himself or live independently. Morrison also said that, while

4

there are programs and facilities that could help J.D.C.D. acquire more skills, J.D.C.D. would not necessarily be able to live independently, even if he took advantage of those opportunities. He also testified that he did not believe that J.D.C.D. should testify in court.

Dodson testified that he did not believe that J.D.C.D. was disabled. He believed that J.D.C.D. was capable of caring for himself. He also believed J.D.C.D. could hold a job somewhere like a grocery store. Dodson admitted, however, that J.D.C.D.'s 2011 strokes resulted in brain damage. He also testified that J.D.C.D.'s Moyamoya disease caused his strokes and that the disease would never go away. He also said J.D.C.D. could not stay in the sun for extended periods of time, so as not to get overheated. Finally, Dodson admitted that, because J.D.C.D.'s math skills were so deficient, it would be difficult for him to manage his finances. Smith introduced into evidence an application for appointment of temporary and permanent guardian of a person, namely J.D.C.D., that Dodson filed in 2012 in which he stated that J.D.C.D.'s "degree of . . . incapacity is total" and that J.D.C.D. could not care for himself.

## II. *Issues Presented*

Dodson asserts two issues on appeal. First, Dodson argues that the trial court did not have the authority to order him to pay child support for J.D.C.D. because J.D.C.D. had already turned eighteen years old. Second, Dodson argues that Smith did not prove that J.D.C.D. had a disability that predated his eighteenth birthday or that the cause of his disability existed or was known to exist prior to his eighteenth birthday.

## III. *Standard of Review*

The standard of review for child support orders, as with most family law issues, is abuse of discretion. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) (applying standard to review child support award); *In re C.S.*, No. 11-12-00294-CV, 2014 WL

972310, at *5 (Tex. App.—Eastland Mar. 6, 2014, no pet.) (mem. op.); *Kemp v. Kemp*, No. 11-11-00292-CV, 2013 WL 5891583, at *2 (Tex. App.—Eastland Oct. 31, 2013, no pet.) (mem. op.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). In family law cases, the traditional sufficiency standard of review overlaps with the abuse of discretion standard of review; therefore, legal and factual sufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *Sink v. Sink*, 364 S.W.3d 340, 344 (Tex. App.—Dallas 2012, no pet.); *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.).

In analyzing a legal sufficiency challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Superior Broad. Prods. v. Doud Media Grp., L.L.C.*, 392 S.W.3d 198, 210 (Tex. App.—Eastland 2012, no pet.). We must review the evidence in the light most favorable to the challenged finding, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 821–22, 827; *Superior Broad.*, 392 S.W.3d at 210. We may sustain a no-evidence or legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810; *Pendergraft v. Carrillo*, 273 S.W.3d 362, 366 (Tex. App.—Eastland 2008, pet. denied).

In analyzing a factual sufficiency challenge, we must consider and weigh all of the evidence and should set aside a finding of fact only if the evidence is so weak

6

or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Bien v. Bien*, 365 S.W.3d 492, 495 (Tex. App.—Eastland 2012, no pet.).

When, as in this case, no findings of fact or conclusions of law are filed or requested, we must presume that the trial court made all the necessary findings to support its judgment. *Roberts v. Roberts*, 402 S.W.3d 833, 838 (Tex. App.—San Antonio 2013, no pet.); *Boyd*, 131 S.W.3d at 611. If the evidence supports the trial court's implied findings, we must uphold the judgment on any theory of law applicable to the case. *Roberts*, 402 S.W.3d at 838; *Boyd*, 131 S.W.3d at 611.

IV. *Analysis*

A. *Issue One: The trial court did not err when it ordered Dodson to pay child support.*

In his first issue, Dodson argues that the trial court erred when it ordered him to pay child support for J.D.C.D. after J.D.C.D. became an adult. Dodson supports his argument by noting that his support obligations for J.D.C.D. had previously terminated because J.D.C.D. had turned eighteen and had graduated high school and that the trial court had not made any finding of disability before J.D.C.D. turned eighteen or graduated high school.

1.  *A trial court maintains continuing, exclusive jurisdiction over matters affecting the child, and an original suit to order support for a disabled child over eighteen may be brought at any time.*

A court that renders a final divorce decree acquires continuing, exclusive jurisdiction over the matters in the decree affecting a child of the marriage. *See* TEX. FAM. CODE ANN. § 155.001(a) (West Supp. 2016) ("Except as otherwise provided by this section, a court acquires continuing, exclusive jurisdiction over the matters provided for by this title in connection with a child on the rendition of a final order."); *see also In re Thompson*, 434 S.W.3d 624, 627 (Tex. App.—Houston [1st

7

Dist.] 2014, orig. proceeding). A court retains its jurisdiction over the child, absent transfer of the cause or the occurrence of a statutory exception. *See In re Thompson*, 434 S.W.3d at 627 (citing *In re Wheeler*, 177 S.W.3d 350, 352–53 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding) ("The court retains continuing, exclusive jurisdiction over the child unless jurisdiction has been transferred under sections 155.201 to 155.207 of the Texas Family Code or an emergency exists.")); *see also* FAM. § 155.001(c) ("If a court of this state has acquired continuing, exclusive jurisdiction, no other court of this state has jurisdiction of a suit with regard to that child except as provided by this chapter . . . or Chapter 262."); *id.* § 155.002 (West 2014) ("Except as otherwise provided by this subchapter, a court with continuing, exclusive jurisdiction retains jurisdiction of the parties and matters provided by this title."). A court loses its continuing, exclusive jurisdiction if one of the following occurs: (1) an order of adoption; (2) the parents remarry and file a subsequent suit for divorce combined with a suit affecting the parent-child relationship; or (3) another court assumed jurisdiction in error and rendered a final order pertaining to the child. *See* FAM. § 155.004; *see also In re Thompson*, 434 S.W.3d at 627.

As our sister court has noted, in a case like this, the trial court has jurisdiction in two different ways. *In re Thompson*, 434 S.W.3d at 627. First, the trial court has continuing, exclusive jurisdiction over matters relating to the child as long as the cause has not been transferred and no other statutory exception exists. Second, the trial court has jurisdiction to hear an original suit for support of an adult disabled child, regardless of whether any previous orders of support have terminated because the child turned eighteen. *See* FAM. § 154.305(a)(2) (stating that suit for support of adult disabled child may be filed "as an independent cause of action or joined with any other claim or remedy provided by this code"); *id.* § 154.305(b) ("If no court has continuing, exclusive jurisdiction of the child, an action under this subchapter

may be filed as an original suit affecting the parent-child relationship."). Therefore, this suit was properly before the trial court.

        2.     *A trial court may find at any time that a child's disability existed or the cause was known to exist before the child's eighteenth birthday.*

A court may order either or both parents to provide support for a disabled child indefinitely if the court finds that "the disability exists, or the cause of the disability is known to exist, on or before the 18th birthday of the child."  FAM. § 154.302(a)(2).  The court need not make such a finding before the child's eighteenth birthday; a parent may bring a suit for support of a disabled child at any time.  *Id.* § 154.305(a)(1) ("A suit under this chapter may be filed . . . regardless of the age of the child"); *id.* § 154.301 (defining "child" as "a son or daughter of any age").  We agree with our sister court's conclusion that, "[r]eading the plain language of the applicable statutes together," a parent may bring a suit for support of a disabled child at any time, but the court must find that the child's disability existed, or that the cause of the disability was known to exist, prior to the child's eighteenth birthday.  *In re Thompson*, 434 S.W.3d at 627 (citing FAM. §§ 154.301, 154.302(a)(2), 154.305(a)(1)).

Like the parent who was ordered to pay support in *In re Thompson*, Dodson argues that the Texas Supreme Court's holding in *Red v. Red* mandates that, "[f]or a parent to be liable for this . . . support, the finding of a non-minority disability must be made prior to the child's eighteenth birthday."  *See Red v. Red*, 552 S.W.2d 90, 91–92 (Tex. 1977); *see In re Thompson*, 434 S.W.3d at 627–28 ("Thompson, however, relies upon [*Red*] for the proposition that the trial court lost jurisdiction over this matter because there has been no prior finding of disability.").

In *Red*, the custodial parent of a twenty-six-year-old, disabled adult filed a motion to modify a divorce decree to order the noncustodial parent to pay child

support. 552 S.W.2d at 90–91. Although the motion alleged that the disabled adult child was physically and mentally disabled "before and since" she turned eighteen, the custodial parent did not make that allegation until the child was twenty-six years old. *Id.* The trial court dismissed the cause for lack of jurisdiction, and the Texas Supreme Court affirmed, holding that a trial court "'may order that payments for the support of the child shall be continued after the 18th birthday' only if the grounds therefor exist and are invoked before the child becomes an adult; i.e., before reaching age 18." *Id.* at 92 (quoting former Family Code).

However, the legislature abrogated the Texas Supreme Court's holding in *Red* when it enacted Section 154.305(a)(1) of the Family Code. That section expressly provides that a suit for support of a disabled child may be brought "regardless of the age of the child." FAM. § 154.305(a)(1). We agree with our sister courts' analysis that "'[t]he statutory support for *Red*'s specific holding as to disabled children was removed when the legislature added a provision allowing a parent to sue, "regardless of the age of the child," for support that would extend beyond the disabled child's eighteenth birthday.'" *In re Thompson*, 434 S.W.3d at 628 (alteration in original) (quoting *Crocker v. Attorney Gen. of Tex.*, 3 S.W.3d 650, 652 n.1 (Tex. App.— Austin 1999, no pet.); *see* Act of May 26, 1989, 71st Leg., R.S., ch. 368, § 2, 1989 TEX. GEN. LAWS 1457 (FAM. § 14.051(d), recodified at FAM. § 154.305(a)(1)). "Similarly, after *Red*, the Legislature supplemented the definition of 'child' to include 'a person over 18 years of age for whom a person may be obligated to pay child support.'" *In re Thompson*, 434 S.W.3d at 628 (quoting FAM. § 101.003; *Crocker*, 3 S.W.3d at 652 n.1).

While Dodson acknowledges that "new legislation has been enacted since *Red* was decided," he argues that "the portion of [*Red*] applicable to this case was not overruled by statute." Dodson argues that the core holding of *Red* remains intact but that a parent may now file suit for continuing support if the child has reached his or

her eighteenth birthday only if the child is also still enrolled in high school. He cites Section 151.001(b) of the Family Code and *Lowe v. Roberts* in support of his argument. *See* FAM. § 151.001(b) ("The duty of a parent to support his or her child exists while the child is an unemancipated minor and continues as long as the child is fully enrolled in a secondary school in a program . . . ."); *Lowe v. Roberts*, No. 14-10-01191-CV, 2012 WL 50617, at *2 (Tex. App.—Houston [14th Dist.] Jan. 10, 2012, no pet.) (mem. op.). Neither of these authorities apply to this case as neither relates to child support for a disabled child. Moreover, Dodson fails to acknowledge Section 154.305(a)(1) of the Family Code, which specifically discusses when a suit may be brought for child support for *disabled* children. *See* TEX. GOV'T CODE ANN. § 311.026 (West 2013) (stating that, when there is a conflict, specific statutory provisions control over general ones); *see also In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 471 (Tex. 2011) (noting that a specific statute would apply over a general one). We hold that the trial court did not err when it ordered Dodson to pay child support for J.D.C.D. even though J.D.C.D. had turned eighteen and graduated from high school prior to the date that Smith filed her second amended petition to modify. We overrule Dodson's first issue on appeal.

B. <u>*Issue Two*</u>: *The trial court did not abuse its discretion in finding that J.D.C.'s disability existed or that its cause was known to exist before his eighteenth birthday.*

In his second issue, Dodson argues that the trial court erred when it ordered him to pay child support for J.D.C.D. because there was no evidence that J.D.C.D. was disabled prior to his eighteenth birthday. Section 154.302 of the Family Code provides an independent cause of action for a parent to seek child support from another parent for an adult disabled child if:

(1) the child, whether institutionalized or not, requires substantial care and personal supervision because of a mental or physical disability and will not be capable of self-support; and

11

(2) the disability exists, or the cause of the disability is known to exist,
on or before the 18th birthday of the child.

FAM. § 154.302(a). Dodson does not dispute that J.D.C.D. is disabled; rather, he argues that the evidence failed to show that J.D.C.D.'s disability existed before his eighteenth birthday. Dodson argues that J.D.C.D.'s condition had improved before he turned eighteen and that J.D.C.D. could take care of himself, at least to some extent, when they took a trip to Hawaii together after his strokes. Dodson points out that two exhibits that Smith introduced into evidence contain evaluations that occurred after J.D.C.D. turned eighteen. We note that these same two exhibits also contain evaluations that occurred prior to J.D.C.D.'s eighteenth birthday.

Additionally, the record shows that Dodson filed an application to be appointed as the temporary and permanent guardian of J.D.C.D. in 2012, when J.D.C.D. was seventeen years old. In that application, Dodson averred that J.D.C.D. was totally incapacitated. Moreover, J.D.C.D.'s disability was caused by his strokes, which were the result of Moyamoya disease—a disease that "is never going to go away." The strokes and the Moyamoya disease were known to exist well before J.D.C.D. turned eighteen. Thus, even though the evaluations about which Dodson complains occurred after J.D.C.D. turned eighteen, the "cause" of the disability addressed in those evaluations was known to exist prior to his eighteenth birthday. That is all that is required under Section 154.302(a)(2), and Appellant does not dispute the trial court's finding on this basis. Therefore, because the trial court had legally and factually sufficient evidence of the extensive nature of J.D.C.D.'s disability, as well as evidence that his disability existed—or that its cause was known to exist—prior to J.D.C.D.'s eighteenth birthday, the trial court did not abuse its discretion in finding that J.D.C.D. was an adult disabled child whom Dodson was obligated to support. We overrule Dodson's second issue on appeal.

## V. *This Court's Ruling*

We affirm the order of the trial court.

MIKE WILLSON

JUSTICE

September 15, 2017

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.